Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2109 | **DATE** | 9/3/2003 |
| **CASE TITLE** | James Sosa vs. Jo Anne Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion for summary judgment is granted. Plaintiff's motion for summary judgment (9-1) is denied. Plaintiff's motion for remand (9-2) is denied. Plaintiff's motion to supplement the record (10-1) is granted. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | **SEP 04 2003** date docketed | 15 |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SLB | courtroom deputy's initials | 03 SEP -3 PM 8:17 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**
SEP 0 4 2003

| | |
|---|---|
| JAMES SOSA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE BARNHART, COMMISSIONER )<br>OF SOCIAL SECURITY, )<br>)<br>Defendant. ) | 03 C 2109<br><br>Judge George W. Lindberg |

### MEMORANDUM OPINION AND ORDER

Plaintiff James Sosa seeks judicial review of a final decision of defendant Commissioner of Social Security denying his claim for Supplemental Security Income ("SSI") benefits. Before the court are the parties' cross-motions for summary judgment. For the reasons stated below, defendant's motion is granted, and plaintiff's motion is denied.

**I.     Procedural History**

On May 2, 2000, plaintiff filed an application for SSI disability benefits, claiming that back pain, dizziness, stroke, a nervous condition, high blood pressure, and asthma limited his ability to work. The claim was denied both initially and on reconsideration. Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"), which took place on September 20, 2001. On March 18, 2002, the ALJ denied plaintiff's request for benefits. Plaintiff requested review by the Appeals Council, which was denied on December 26, 2002, leaving the ALJ's decision as the final decision of the Commissioner. On March 24, 2003, plaintiff filed this action.

15

## II. Factual Background

### A. Plaintiff's Hearing Testimony

Plaintiff was born on April 25, 1956, and was 45 years old at the time of the ALJ's decision. He has an eighth-grade education. For approximately fifteen years, ending in December 1998, plaintiff did stock work at a shoe company. Plaintiff then worked for Handy Andy as a material handler until April 2000. At some point, plaintiff worked as a laborer at a paint factory, where he moved five-gallon paint containers; plaintiff was unsure when he worked at this job. Plaintiff states that he has been unable to work since April 2000. Plaintiff claims that he became disabled on June 7, 1999.

Plaintiff testified that he is unable to work because of asthma, arthritis, and back pain. He stated that he could lift ten pounds, and could walk two miles. Although he testified that he has a problem with his nerves, he stated that he has never been given medication for his mental condition. He has no problems with his memory or concentration, and has no problems getting along with people. He testified that he was not able to sleep the night before the hearing. His medications make him nervous and drowsy. He testified at one point that he never abused alcohol, and at another point that he stopped abusing alcohol in 1999. He lives with his mother, and described his typical activities as watching television, making his meals, and washing his clothes. Occasionally he goes to the store. His only hobby or interest is music.

### B. Medical Evidence

Plaintiff's medical records indicate that he was admitted to MacNeal Hospital on January 26, 1998 for alcohol detoxification. Plaintiff was discharged on January 29, 1998.

Plaintiff was seen at MacNeal Hospital on October 13, 1998 for rib pain following a fall

2

two weeks earlier. A chest x-ray taken at that time revealed "mild degenerative changes of the thoracic spine," but no abnormality was seen. Plaintiff was diagnosed with a chest contusion and prescribed Vicodin and Motrin.

On April 7, 2000, plaintiff went to Cook County Hospital, complaining of back pain. At that time, he was prescribed Robaxin (a pain medication), Motrin, and Albuterol (an asthma medication). Plaintiff returned to Cook County Hospital on May 15, 2000, seeking refills of his prescriptions. X-rays taken of plaintiff's spine at that visit indicated degenerative changes.

Plaintiff again returned to Cook County Hospital on June 1, 2000, complaining of back pain, "sniffles," and a cough. Plaintiff was diagnosed with an upper respiratory infection and back pain. At that time, he was prescribed Tylenol, Methocarbamol (the generic name for the pain medication Robaxin), and cough syrup, and was instructed to avoid lifting heavy weights.

Plaintiff returned to Cook County Hospital on July 18, 2000, where he was diagnosed with lumbosacral muscle strain.

On October 3, 2000, plaintiff went to Cook County Hospital, seeking refills of his prescriptions. The medical records for this visit indicate that plaintiff's pain was progressively worsening.

Plaintiff returned to Cook County Hospital on February 6, 2001, again seeking refills of his prescriptions. The medical records for this visit indicate that at that time plaintiff reported no symptoms, and was not in distress.

Plaintiff returned to Cook County Hospital on February 21, 2002, complaining of back pain. At that time, plaintiff indicated that the pain was worse when he was inactive, and that he could walk approximately 25 blocks before his legs began to hurt. Plaintiff was diagnosed with

3

lower back pain and hypertension. He was instructed to remain active, but to limit lifting heavy weights. On March 7, 2002, plaintiff filled a prescription for Motrin and Robaxin.

### C. Vocational Expert's Testimony

Vocational expert Gleeann Kehr ("Kehr") testified at the ALJ's request. Kehr testified that plaintiff's prior work at the shoe company would be classified as light, and at the very low end of semi-skilled work (offering no benefit over an unskilled position). She classified the remainder of plaintiff's prior work as heavy or medium and unskilled.

At the hearing, Kehr responded to several hypothetical questions posed by the ALJ. The ALJ first asked Kehr to assume a literate individual of plaintiff's age and with his education who was:

> limited to lifting no more than 50 pounds on an occasionally [sic] basis and no more than 25 pounds on a frequent basis. Was unlimited in the ability to stand, walk, bend, stoop, kneel, crouch, and crawl. Was restricted against work involving environments with high concentrations of dust, fumes, or temperature extremes or respiratory irritants and is unable to work in environments where there would be unprotected heights or hazardous machinery.

The ALJ then asked Kehr whether a person with such hypothetical abilities and limitations could return to any past work. Kehr testified that such a claimant could work as a stock clerk.

The ALJ then asked Kehr whether her answer would change if the hypothetical person could lift no more than twenty pounds on an occasional basis, and no more than ten pounds on a frequent basis. Kehr responded that such a claimant still could work as a stock clerk. Finally, Kehr testified that such a claimant could work as a stock clerk even if he were limited to lifting no more than ten pounds.

Finally, Kehr testified that based on plaintiff's testimony that he could lift up to ten

4

pounds and could walk as far as two miles, he would be able to perform his past relevant work.

### III. Legal Standard

Under Section 405(g), a district court may affirm, modify, or reverse the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g). The court must uphold the Commissioner's findings of fact if they are supported by substantial evidence. Id.; Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000). Substantial evidence is evidence that "a reasonable mind would accept as adequate to support a conclusion." Binion ex rel. Binion v. Chater, 108 F.3d 780, 782 (7th Cir. 1997). The court may not reweigh the evidence, resolve conflicts, decide credibility questions, or substitute its judgment for that of the ALJ. Clifford, 227 F.3d at 869. However, the review must be more than an uncritical rubber stamp. Id.

The Social Security regulations provide a five-step inquiry to use in determining whether a claimant is disabled:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals one of the impairments listed by the SSA, see 20 C.F.R. § 404, Subpt. P, App. 1;
(4) whether the claimant can perform [his] past work; and
(5) whether the claimant is capable of performing work in the national economy.

See Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995) (citing 20 C.F.R. § 404.1520). If a claimant satisfies the first three steps, he will automatically be found disabled. Id. If a claimant satisfies the first two steps, but not the third, then he must satisfy step four. Id. Once step four is satisfied, the burden shifts to the Social Security Administration ("SSA") to establish step five. Id.

5

## IV. Analysis

### A. ALJ's Decision

At step one, the ALJ found that plaintiff is not currently employed. Next, at step two, the ALJ found that plaintiff's hypertension, back pain, asthma, and history of substance abuse, at least in combination, constitute a severe impairment. At step three, the ALJ found that plaintiff's impairments, even in combination, do not meet or medically equal a listed impairment. At step four, the ALJ found that plaintiff can perform past relevant work, such as that of a stock clerk. Accordingly, the ALJ concluded that plaintiff was not under a "disability," as defined under the Social Security Act.

### B. Hypothetical Posed to Vocational Expert

Plaintiff first argues that the ALJ erred in incorporating the assumption in his hypothetical posed to the vocational expert that plaintiff was unlimited in the ability to stand, walk, bend, stoop, kneel, crouch, and crawl. Although plaintiff concedes that he testified that he could walk two miles, he notes that there was no discussion at the hearing of his ability to stand, bend, stoop, kneel, crouch, or crawl. In addition, plaintiff contends that this assumption conflicted with plaintiff's medical evidence, which even the ALJ agreed showed severe medical impairments.

"When an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making his strongest case for benefits." Glenn v. Secretary of Health & Human Servs., 814 F.2d 387, 391 (7th Cir. 1987). Here, plaintiff was represented by counsel at the hearing. The ALJ specifically invited counsel to pose a different hypothetical question to Kehr that would better reflect what the record showed, an invitation that counsel declined. The court concludes that the ALJ's hypothetical questions

6

were proper.

### C. Credibility Finding

Next, plaintiff argues that the ALJ did not sufficiently explain his basis for finding that plaintiff's testimony was not credible. Under Social Security Ruling 96-7p, the ALJ's determination regarding a claimant's credibility

> must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

It is not sufficient for the ALJ to make "a single conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001) (quoting Social Security Ruling 96-7p). Rather, the ALJ must supply reasons for his or her credibility assessment that "build an accurate and logical bridge between the evidence and the result." See Shramek v. Apfel, 226 F.3d 809, 811 (7th Cir. 2000). In determining whether such a gap or contradiction exists between the evidence and the result, the court must "give the [ALJ's] opinion a commonsensical reading rather than nitpicking at it." Id. (quoting Johnson v. Apfel, 189 F.3d 561, 564 (7th Cir. 1999)).

In this case, the ALJ stated in his decision that plaintiff's "testimony, when compared against the objective evidence and evaluated using factors in SSR 96-7p, was not credible." The ALJ observed that plaintiff was seen on January 29, 1998 for alcohol withdrawal, and noted that plaintiff was seen on two occasions for medication refills when he was having no symptoms and was not in distress. The court agrees that two of plaintiff's hospital visits noted by the ALJ were for reasons irrelevant to plaintiff's disability claim. First, plaintiff denies that he abuses alcohol,

7

the subject of his January 1998 hospitalization. In addition, as the ALJ noted, plaintiff went to the hospital on February 6, 2001 for a medication refill when he had no symptoms and was not in distress.

The ALJ did not reference plaintiff's hospital visits on April 7, 2000, June 1, 2000, and July 18, 2000 in which plaintiff complained of back pain, and fails to note that the record of plaintiff's October 3, 2000 hospital visit indicated that plaintiff's pain was progressively worsening. However, the ALJ noted that at plaintiff's February 21, 2002 hospital visit – the most recent visit about which evidence was presented to the ALJ – plaintiff was advised to remain active, while limiting heavy weights, doing back-strengthening exercises, and taking pain medication as needed. Elsewhere in his decision, the ALJ observed that plaintiff had testified that he can walk up to 2-1/2 miles.[1] Finally, the ALJ stated that there was no persuasive evidence in the record that plaintiff would be unable to stand, walk, and sit for six hours in an eight-hour workday.

Although the ALJ could have more clearly laid out his reasons for finding that plaintiff's allegations regarding his limitations were not credible, the decision adequately shows an accurate bridge between the evidence and the result. The ALJ's conclusion that plaintiff suffers from severe impairments including hypertension, back pain, and asthma, but that these impairments did not limit plaintiff's ability to perform past relevant work, are consistent with the medical evidence, along with plaintiff's own testimony that he was able to walk two miles and lift up to ten pounds. The court finds that the ALJ's determination that plaintiff was not disabled was supported by substantial evidence.

---

[1] Plaintiff actually testified that he could walk two miles.

8

### D. Consultative Mental Health Examination

Plaintiff next argues that the ALJ erred in failing to order a consultative mental health examination. On March 9, 2002, plaintiff's counsel requested that the SSA refer plaintiff for a mental health examination. The ALJ denied the request on the basis that there was no evidence in the record that was "suggestive of a cognitive impairment or of an affective or anxiety-related disorder." According to the ALJ, the only evidence of a possible mental impairment was past substance abuse, which plaintiff maintained was no longer a problem. In any event, noted the ALJ, even if plaintiff's substance abuse were a current, severe impairment, disability benefits are barred when drug or alcohol abuse is material to a finding that a claimant is disabled.

Plaintiff argues that the ALJ improperly disregarded evidence in the record that indicated that plaintiff could have a cognitive impairment or mental health problem. For example, an SSA employee who interviewed plaintiff on May 2, 2000 observed that plaintiff "talks really fast. He moves around a lot. He makes a lot of quick movements. He walks really fast." Another SSA employee who interviewed plaintiff on July 13, 2000 observed that plaintiff "seemed jittery and nervous. He talked real fast and [sic] jerky movements. He also seem [sic] a little slow mentally." At the hearing, plaintiff testified that he has a problem with his nerves and had had difficulty sleeping the previous night. He testified that his medication causes nervousness and drowsiness. Although he testified that he has never been given medication for his nervous state, in an August 5, 2000 questionnaire and in an undated document titled "Claimant's Statement When Request for Hearing is Filed and the Issue is Disability," plaintiff indicated that he was taking Diazepam (more commonly known as Valium).

An ALJ has an obligation to develop a full and fair record, see Thompson v. Sullivan,

9

933 F.2d 581, 585 (7th Cir. 1991), and may order a consultative examination "when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [the] claim." 20 C.F.R. § 416.919a(b). "It is the claimant, however, who bears the responsibility of providing medical evidence of a mental impairment." Howell v. Sullivan, 950 F.2d 343, 348 (7th Cir. 1991). The courts generally defer to the ALJ's judgment in deciding how much evidence to gather. See, e.g., Luna v. Shalala, 22 F.3d 687, 692 (7th Cir. 1994); Kendrick v. Shalala, 998 F.2d 455, 458 (7th Cir. 1993).

The court finds that the ALJ did not err in declining to order a mental examination. Although plaintiff notes that SSA employees observed in interviews that he talked fast, made quick movements, and seemed nervous, these are lay observations that do not necessarily compel a conclusion that plaintiff had a mental impairment. In addition, while plaintiff claims that he was taking Diazepam in 2000, he has offered no medical evidence to support his claim that he was prescribed Diazepam at any time after his hospital stay for alcohol detoxification in 1998.[2] There is no evidence in the record that indicates that plaintiff was ever seen by a physician or therapist for mental problems, and his medical records reveal no mental health complaints or symptoms.

Indeed, plaintiff testified that he has no problems with his memory or concentration, and has no problems getting along with people. He is able to make his meals, wash his clothes, and occasionally go to the store. He testified that he does not currently abuse alcohol. Given the absence of objective medical evidence of a mental impairment, the court cannot find that the

---

[2] An October 3, 2000 prescription form from Cook County Hospital appears to include a prescription for Diazepam that was crossed out.

ALJ's decision not to order a consultative mental examination was unreasonable. Cf. Howell, 950 F.2d at 349 (finding that ALJ was under no duty to order a consultative examination where there was no objective evidence to support claimant's complaints of depression and alcoholism).

### E. Request for Remand

As an alternative to his request that this court reverse the ALJ's decision, plaintiff urges the court to remand the case to the ALJ for further hearing based on new evidence, pursuant to sentence six of 42 U.S.C. § 405(g).[3] Plaintiff submitted to the Appeals Council records of medical evaluations he received after the ALJ made his decision. These records show that plaintiff was examined at Cook County Hospital on April 4, 2002 based on his complaint that he became dizzy for approximately one minute in the mornings when he got out of bed; the discharge diagnosis indicates "dizziness – resolved." The records also include an April 4, 2002 referral for physical therapy and a list of physical therapy appointments from April 25, 2002 to June 13, 2002. The records show a May 30, 2002 referral to an ophthalmologist for plaintiff's "longstanding [history] of intermittent difficulty in focusing" in his right eye. Records of an October 10, 2002 examination reveal that plaintiff had generalized tremors in his hands, and muscle rigidity; he was referred to a neurologist for evaluation for possible Parkinson's disease. Plaintiff was also referred for a CT scan and MRI of his back. The records do not include the results of any of the referrals, tests, or physical therapy sessions.

---

[3] Plaintiff has also filed a separate Motion to Supplement the Record to include this new evidence. Since this new evidence was presented to the Appeals Council, it technically is part of the administrative record. See Eads v. Secretary of Dep't of Health & Human Servs., 983 F.2d 815, 817 (7th Cir. 1993). However, the court may not consider the new evidence in reviewing the correctness of the ALJ's decision, because the evidence was not presented to the ALJ. See id. Accordingly, the court grants plaintiff's motion to supplement the record, but reviews the new evidence only for the purpose of determining whether to grant a remand. See id.

11

Under sentence six of 42 U.S.C. § 405(g), the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Plaintiff bears the burden of demonstrating that remand is appropriate. See Sample v. Shalala, 999 F.2d 1138, 1144 (7th Cir. 1993).

Here, defendant concedes that the evidence plaintiff submits is new. In addition, plaintiff had good cause for not having presented this evidence at the administrative hearing, because it was not in existence at that time. Defendant argues that the new evidence is not material.

New evidence is "material" if there is a reasonable probability that the ALJ would have reached a different conclusion had the evidence been considered. Perkins v. Chater, 107 F.3d 1290, 1296 (7th Cir. 1997). Here, evidence that plaintiff experienced minor dizziness in April 2002 would not be sufficient to change the ALJ's decision. Nor would evidence that plaintiff was scheduled for physical therapy, or for a CT and MRI of his back, change the ALJ's conclusion that plaintiff's back pain did not prevent him from performing past relevant work. The ALJ acknowledged that plaintiff's back pain was a severe impairment (at least in combination with plaintiff's other impairments), and evidence that plaintiff was scheduled for treatment and further testing, without the results of such treatment and testing, adds nothing of consequence to the record.

Similarly, plaintiff has not provided the result of any ophthalmological evaluation for plaintiff's "intermittent" difficulty focusing in one eye. Nor has he presented any evidence that this difficulty is a severe problem. Indeed, although the May 30, 2002 referral characterizes the eye problem as a longstanding one, plaintiff's prior medical records and testimony do not

12

mention it. The court concludes that plaintiff has not shown that the evidence he submitted relating to this problem is material.

Nor has plaintiff provided the result of any neurological evaluation received pursuant to the October 10, 2002 referral, or evidence of any diagnosis of Parkinson's disease. There is no evidence that the hand tremors and muscle rigidity observed on October 10, 2002 were severe enough to limit plaintiff's ability to work. In any event, this evidence is not material because it reports plaintiff's then-current condition, and does not relate back to the period that was at issue before the ALJ. See Kapusta v. Sullivan, 900 F.2d 94, 97 (7th Cir. 1990) (medical reports that postdate the ALJ's decision are not material if they speak only to the claimant's current condition and do not relate back to the period that was at issue before the ALJ). The court concludes that plaintiff has not established a reasonable probability that these new records would have changed the ALJ's decision. Accordingly, plaintiff's motion for remand is denied.

**ORDERED:** Defendant's Motion for Summary Judgment is granted. Plaintiff's Motion for Summary Judgment [9-1] is denied. Plaintiff's Motion for Remand [9-2] is denied. Plaintiff's Motion to Supplement the Record [10-1] is granted.

ENTER:

George W. Lindberg
Senior United States District Judge

DATED: 9-3-03

13